1

2

3                           UNITED STATES DISTRICT COURT

4                                DISTRICT OF NEVADA

5                                     * * *

6    KYLE WIEBEN, *et al.*,                      Case No. 3:24-cv-00575-MMD-CSC

7                         Plaintiffs,                       ORDER

8          v.

     NEVADA GOLD MINES LLC,
9
                         Defendant.
10

11   **I.    SUMMARY**

12         Plaintiffs[1] bring this collective action against their former employer, Nevada Gold

13   Mines LLC ("NGM"), asserting that NGM violated the Fair Labor Standards Act

14   ("FLSA"), 29 U.S.C. § 201, *et seq.*, and Nevada law by failing to compensate hourly

15   employees for "off the clock" time riding mandatory NGM shuttles to mine sites and

16   handling equipment, tools, and protective clothing outside their scheduled shifts. (ECF

17   No. 1 ("Complaint").) NGM filed a motion to dismiss. (ECF No. 26 ("Motion")[2].) The

18   Court heard oral argument on the Motion. (ECF No. 48 ("Hearing").) For the reasons

19   explained below, the Court grants the Motion in part and denies it in part. The Court

20   grants the Motion as to Plaintiffs' Nevada shuttle-time claims, dismissing those claims

21   without prejudice and with leave to amend. The Court denies the Motion as to the

22   remaining FLSA and state law claims.

23   ///

24

25

26   _____

27        [1]Named Plaintiffs are Kyle Wieben and Austin Stockstill. (ECF No. 1.)

         [2]Plaintiffs responded (ECF No. 38) and Defendant replied (ECF No. 41).
28   Defendant filed a notice of errata regarding the Motion. (ECF No. 42.)

## II.    BACKGROUND[3]

Defendant NGM employed Plaintiffs as hourly employees at several of its gold mine sites in rural Nevada.[4] (ECF No. 1 at 4.) Plaintiffs bring suit seeking to recover unpaid wages on behalf of themselves and a putative class of similarly-situated hourly employees "who were subject to NGM's shuttle policy, shift rate pay scheme, and/or bonus pay scheme." (*Id.*)

At NGM's mines, Plaintiffs worked shifts of approximately 12 hours a day, four to five days a week, totaling 48 to 60 hours "on the clock" during a single workweek—a standard schedule for hourly employees. (*Id.* at 7-8.) NGM did not track its employees' actual daily and weekly work hours, instead "assum[ing] that [they] worked exactly the number of hours NGM scheduled them to work" and "pre-fill[ing] Plaintiffs' [and other similarly-situated employees'] scheduled shifts" to calculate compensation. (*Id.*) NGM paid Wieben approximately $38.50 an hour and Stockstill $35.51 an hour. (*Id.*)

Plaintiffs allege that they were not properly compensated for their off-the-clock time on NGM's shuttles to mine sites. (*Id.* at 6-8.) Under NGM's shuttle policy, hourly employees are required to "arrive at a designated location (a parking lot) and ride a[n NGM contracted] shuttle bus to their assigned mine" at the beginning of each workday. (*Id.* at 2.) They are also required to ride the mandatory shuttle back to the designated lot at the end of their shifts. (*Id.*) In order to board the shuttles, employees must show company identification badges. (*Id.* at 10.) They are not permitted to use their own vehicles or any other means of transportation shuttles to access jobsites. (*Id.*)

Because NGM's mine sites are located in remote areas, hourly employees' daily shuttle time is significant: Plaintiffs allege that they spent approximately an hour and 20

---

[3]The following facts are adapted from the Complaint.

[4]NGM employed Wieben as a miner in Goldstrike Mine, located in Eureka County, from approximately January 2018 to October 2022, and Stockstill as an electrician in Twin Creeks Mine, located in Humboldt County, from approximately January 2023 to February 2024. (*Id.* at 4, 7.)

minutes on NGM's mandatory shuttles traveling in each direction, sometimes stopping at multiple sites to drop other employees off, for a total of roughly two hours and 40 minutes a day. (*Id.*) NGM did not compensate Plaintiffs for any of this time. (*Id.*)

Plaintiffs further allege that, after requiring employees to shuttle to mine sites, "NGM requires . . . Hourly Employees to gather tools and equipment [,]….suit out in protective clothing and safety gear necessary to safely perform their job duties, meet with Hourly Employees ending their shifts, attend "line out" meetings," and otherwise begin activities related to their principal job duties prior to the start of their scheduled shifts, without compensation.[5] (*Id.* at 2.) These activities take approximately 15 to 45 minutes each work day. (*Id.*) Similarly, at the end of their scheduled shifts, hourly employees spend 15 to 45 additional unpaid minutes "wash[ing]-up, chang[ing] out of their safety gear and protective clothing, and stor[ing] their tools and equipment." (*Id.*)

Based on these central allegations, Plaintiffs bring claims for (1) failure to pay overtime wages under the FLSA, 29 U.S.C. § 201, *et seq.*; (2) failure to pay for all hours worked under NRS §§ 608.140 and 608.016; (3) failure to pay minimum wages in violation of Art. 15, § 16 of the Nevada constitution; (4) failure to pay overtime wages under NRS §§ 608.140, 608.018; and (5) failure to timely pay all wages upon termination under NRS §§ 608.140 and 608.020-050.[6] (ECF No. 1.) They seek class

---

[5]Plaintiffs specifically allege that NGM requires "protective clothing and safety gear" including "hard hat, head lamp, reflective shirt, pants, and/or coveralls, ear protection, steel toed boots, safety glasses, gloves, respirator, SCSR, tracker, mining belt," and requires gathering tools and equipment including "tool set, wrenches, pliers, hammers, spare parts, wires, etc." which are "fundamentally necessary to performing [hourly employees'] jobs." (*Id.* at 12.) Some of this safety gear is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq.*

[6]In bringing these claims as a collective action, Plaintiffs propose three subclasses: (1) A class of "FLSA Collective Members," including "[a]ll hourly miners, electricians, and similar employees who worked for NGM during the past 3 years through final resolution of this action"; (2) a "Nevada Class," including "[a]ll hourly miners, electricians, and similar employees who worked for NGM in Nevada during the past 3 years"; and (3) a "Shuttle Class," including "[a]ll hourly miners, electricians, and similar employees who worked for NGM in Nevada and who NGM required to ride a shuttle to their designated mine during the past 3 years." (*Id.* at 4-5.)

1  certification, unpaid overtime and minimum wages, and liquidated and punitive

2  damages, to the extent available under federal and state law. (*Id.* at 26-27.)

3  **III.  DISCUSSION**

4          NGM moves to dismiss the Complaint for failure to state a claim under Federal

5  Rule of Civil Procedure 12(b)(6). (ECF No. 26.) *See* Fed. R. Civ. P. 8; *Bell Atlantic Corp.*

6  *v. Twombly*, 550 U.S. 544, 570 (2007) (holding that to withstand a Rule 12(b)(6)

7  challenge, a plaintiff must allege facts to "nudge[] their claims across the line from

8  conceivable to plausible"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (holding that a

9  district court must accept as true all well-pled factual allegations in a complaint, while

10  legal conclusions are not entitled to the assumption of truth). NGM argues that (1)

11  Plaintiffs' FLSA claims are deficient because the Complaint fails to plead that any class

12  plaintiff worked forty or more hours in a single workweek; (2) all "shuttle-time" claims fail

13  because transportation time is not compensable under the FLSA or Nevada law; (3)

14  Plaintiffs' state minimum wage claims fail because NGM complied with minimum wage

15  requirements; and (4) Wieben's claims are barred by the statute of limitations.[7] (ECF

16  No. 26.) The Court heard oral argument limited to two issues raised in the parties' filings

17  regarding Plaintiffs' shuttle-time and minimum wage claims.[8] (ECF No. 48.) The Court

18  will address each of NGM's asserted bases for dismissal in turn.

19  ///

20

21  _____

22          [7]NGM also argues that any claims regarding "meal and rest" breaks fail because
   the FLSA does not require employers to compensate meal and rest time, and because
23  there is no private right of action under NRS § 608.019. (ECF No. 26 at 14-15.) In their
   opposition, however, Plaintiffs maintain that they are not attempting to raise any direct
24  meal-and-rest time claims. (ECF No. 38 at 13-14.) Based on this representation, the
   Court need not further address NGM's argument as to this issue.

25          [8]The Court heard argument as to two narrow questions: "(1) [W]hether the
   Nevada Supreme Court's answer to a pending certified question regarding the
26  incorporation of the Portal-to-Portal Act into Nevada's wage-hour statutes will impact
   Plaintiffs' Nevada-law shuttle claims in the instant action," and "(2) whether, under
27  Nevada law, a minimum-wage violation is properly calculated based on the workweek
   method, or based on each individual hour worked." (ECF No. 47.)

28

### A.    FLSA Overtime Claims

NGM first argues that Plaintiffs' FLSA overtime claims should be dismissed because the Complaint "fails to plead with particularity any class plaintiff that worked forty hours in a given workweek," instead relying only on "generalized allegations and patterns of unpaid time." (ECF No. 26 at 8-9.) At this stage, however, Plaintiffs' allegations are sufficient to support that they worked more than forty hours during some or all weeks as NGM hourly employees, and the Court declines to impose an inappropriately heightened particularity requirement.[9]

Addressing the degree of specificity required to state a claim for failure to pay minimum or overtime wages under the FLSA, the Ninth Circuit has made clear that in general, "a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644-46 (9th Cir. 2014) ("[A]t a minimum [a] plaintiff must allege at least one workweek when he worked in excess of forty hours and was not paid for the excess hours . . . ."). Because "the pleading of detailed facts is not required under Rule 8," a plaintiff need not "plead their hours with mathematical precision," or even "approximate the number of hours worked without compensation." *Id.* at 646 (quoting *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013)). *See also id.* at 645 ("[W]e decline to make the approximation of overtime hours the *sine qua non* of plausibility for claims brought under the FLSA."). Nevertheless, a plaintiff must do more than simply "parrot the statutory language of the FLSA"; they must "draw on their memory and personal experience to develop factual allegations with sufficient specificity that they plausibly suggest that a defendant failed to comply with its statutory obligations." *Id.* at 643. This plausibility inquiry is flexible and "context-specific." *Landers,* 771 F.3d at 645 (quoting

---

[9]NGM acknowledges that, even if the Court were to dismiss Plaintiffs' overtime claims as too general, the deficiency "might be remedied by alleging a specific week for each plaintiff." (*Id.* at 20-21 n. 17.)

*Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir.2013) ("A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, *or any other facts that will permit the court to find plausibility*.") (emphasis added)).

NGM argues that Plaintiffs' allegations are deficient under *Landers*. (ECF No. 26 at 8-9.) *See* 771 F.3d at 640-41, 645-46 (finding that FLSA claims failed to cross the line between mere possibility and plausibility because, although the plaintiff alleged in general terms that he worked more than 40 hours per week and stated facts going to defendants' "*de facto* 'piecework no overtime'" compensation system, he failed to include "any detail regarding a given workweek"). *See also Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir.2012) (finding allegations deficient where they simply paraphrased the statute, without examples of unpaid time, a description of the uncompensated work, or estimates of amounts). But "*Landers* does not stand for the proposition that a plaintiff asserting an overtime claim must plead an itemized calendar of each date on which he was denied overtime wages and the amount of those unpaid wages." *Sanchez v. Sams W., Inc.*, No. 2:21-CV-05122-SVW-JC, 2021 WL 8531592, at *2 (C.D. Cal. Dec. 23, 2021). *See also Landers*, 771 F.3d at 644-46 (noting that "most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants"). And here, Plaintiffs have alleged facts which suggest more than a mere possibility or vague pattern of failure to pay overtime.

Plaintiffs specifically assert that under their normal schedules, they were expected to work 12-hour shifts over four- or five-day workweeks, totaling 48 to 60 hours of work per week.[10] (ECF No. 1 at 4.) By definition, any hours worked beyond this

---

[10]Elsewhere in its response, NGM does not appear to take issue with Plaintiffs' characterization of the average workweek as 48 to 60 hours. For example, NGM notes on its own accord that "[a]lthough the Complaint does not allege it, Plaintiffs did receive overtime pay for those overtime hours [included in their shifts] they worked each workweek." (ECF No. 26 at 18 n. 15.)

48- or 60-hour baseline would constitute overtime. *See, e.g.*, *Coyne v. Las Vegas Metro. Police Dep't*, No. 2:22-cv-00475-APG-VCF, 2022 WL 4379155, at *2 (D. Nev. Sept. 21, 2022) ("A reasonable inference from the allegation that the ['on the clock'] shift they were working was itself overtime . . . is that any pre- and post-shift activities would also constitute overtime if that time is compensable."). Plaintiffs also provide sufficient specificity regarding their activities during overtime periods. *See Pruell*, 678 F.3d at 13. For example, they allege that they spent 15 to 45 minutes at the beginning and end of each scheduled shift gathering and returning tools and equipment and handling protective equipment, and they assert they were not compensated for this time.[11] (ECF No. 1 at 4, 7-8, 10.)

These facts distinguish the instant circumstances from those in which more conclusory allegations force defendants to guess if and when an alleged FLSA violation has occurred. *See, e.g.*, *Clark v. Bank of Am., N.A.*, No. 2:16-cv-02228-GMN-VCF, 2017 WL 3814665, at *2 (D. Nev. Aug. 30, 2017) (finding that one plaintiff's claims failed because she did not "supplement the general allegation of uncompensated overtime pay with a specific workweek," but concluding that a different plaintiff met the standard by providing shift hours and the average daily pre-shift time for which she was not paid during a pay period); *Coyne v. Station Casinos LLC*, No. 2:16-cv-02950-JCM-NJK, 2017 WL 1745031, at *4 (D. Nev. May 2, 2017) (finding a plaintiff's allegations insufficient where his "failure to identify specific shift lengths and details of a specific work week" would "require[] the court to assume that he always worked five shifts of eight hours per week and never deviated therefrom"); *Pearson v. InTouchCX Sols., Inc.*, No. 2:23-CV-01888-APG-MDC, 2024 WL 4279340, at *4 (D. Nev. Sept. 23, 2024).

---

[11]As further discussed below, Plaintiffs state that they do not intend to bring FLSA claims regarding shuttle time, and thus their FLSA claims are confined to these other pre- and post-shift activities.

1    In sum, because Plaintiffs have stated facts supporting that they worked in

2  excess of 40 hours each week under their standard schedules, the Court finds that they

3  need not plead more and declines to dismiss the FLSA overtime claims.

4    **B.    Shuttle-Time Claims**

5    Defendant next argues that Plaintiffs fail to state viable shuttle-time claims under

6  Nevada law or the FLSA based on their allegations that NGM "subjected [employees] to

7  its shuttle policy that required them to work significant time 'off the clock' without

8  compensation." (ECF No. 26 at 10-14.) Plaintiffs emphasize that they only bring shuttle-

9  time claims under state law and do not intend to bring independent claims regarding

10 transportation hours under the FLSA. (ECF No. 38 at 5-6.) The Court construes the

11 Complaint accordingly. Because Plaintiffs fail to plead facts supporting any colorable

12 shuttle-time claims under Nevada law, the Court dismisses these claims. However, as

13 explained below, the Court will grant Plaintiffs leave to amend to replead facts

14 supporting that NGM's shuttle pickup lots constitute work sites, such that after arrival at

15 designated loading areas, Plaintiffs' time constitutes compensable work.[12] Given that

16 narrow questions of Nevada law are dispositive here, the Court's ruling does not rest on

17 the outcome of an adjacent certified question currently pending before the Nevada

18 Supreme Court—namely, whether the federal Portal-to-Portal Act, which makes some

19 kinds of work non-compensable under the FLSA, has been incorporated into Nevada

20 wage and hour statutes.[13]

21

22    [12]In the Complaint, Plaintiffs also point to NRS § 608.140 in asserting their
23 Nevada-law claims. But as NGM notes, NRS § 608.140 provides a mechanism for
   attorney's fees, but does not provide an independent basis for relief. (ECF No. 26 at 13
24 n. 6.)

25    [13]At the Hearing, the Court heard argument on the potential impact of the
   pending certified question raised in *Malloy v. Amazon.com Servs., LLC*, No. 2:22-CV-
26 00286-ART-MDC, 2024 WL 3276274, at *1-2 (D. Nev. July 1, 2024). In *Malloy*, Amazon
   employees brought claims related to mandatory pre-shift protective screenings for
27 COVID-19. *See id*. Judge Anne Traum found that Nevada "has not incorporated the
   Portal-to-Portal Act," but ultimately directed a certified question to the Nevada Supreme
28 Court. *Id.* at *3 (citing *In re: Amazon.Com, Inc. Fulfillment Ctr. Fair Lab. Standards Act
   (FLSA) & Wage & Hour Litig.*, 905 F.3d 387, 402-04 (6th Cir. 2018)). Counsel for NGM

Under Nevada law, "an employer shall pay to the employee wages for each hour the employee works." NRS § 608.016. *See also id.* § 608.018(2) (providing that an employee is entitled to overtime compensation for qualifying hours worked). The Nevada Labor Commissioner has directly addressed work outside of scheduled hours and compensation for employee travel in regulations implementing NRS § 608.016. *See* NAC § 608.115; *id.* § 608.130. *See also* NRS § 233B.040(1) (providing that properly-adopted agency regulations "have the force of law"); *id.* § 607.160 (charging the Labor Commissioner with enforcing Nevada labor laws). The regulations provide that, in general, "[a]n employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." NAC § 608.115(1). However, NAC § 608.130(2)(a) further specifies that "travel by an employee" is "considered to be time worked by the employee" *only* "(1) If the travel is between different work sites during a workday; or (2) If the employee is providing transportation for another employee on behalf of an employer who offers transportation for the convenience of his employees." *Id.* § 608.130(2)(a). By contrast, travel "[i]s *not* considered to be time worked by the employee if the travel is between the home of the employee and the place of work of the employee regardless of whether the employee works at a fixed location or at different places of work." *Id.* § 608.130(2)(b) (emphasis added).

Because Nevada law is clear that travel does not qualify as time worked when it is between the home of the employee and the "place of work" under NAC §

_____

maintained that in their view, the Nevada Supreme Court's response to the certified question in *Malloy* would not impact the resolution of the claims in this case, because whereas *Malloy* involves unsettled questions as to the appropriate standard for determining whether some kinds of pre-shift activities are compensable work, explicit Nevada statutory provisions make clear that travel time does not constitute work. Counsel for Plaintiffs, meanwhile, maintained that the PPA has not been incorporated, and that regardless, the PPA did not change the definition of work, only creating a category of non-compensable work. Plaintiffs do not concede, moreover, that the incorporation of the Portal-to-Portal would prevent them from stating a claim. (ECF No. 38 at 22-23.)

608.130(2)(b), but does qualify when it is "between different work sites during a workday" under NAC § 608.130(2)(a)(1), the question now before the Court is relatively straightforward: do the lots where employees arrive to board NGM's shuttles constitute "places of work," or does shuttle time fall within the purview of travel between employees' homes and their first work sites of the day (i.e., the mine sites)? Indeed, at the Hearing, Plaintiffs' counsel acknowledged that a shuttle pickup site must be considered a "place of work," "a place where work is performed," or the "start of work" under NAC § 608.130(2)(a) in order for Plaintiffs' claims to survive. (ECF Nos. 48, 49.)

NGM argues that their shuttles do nothing more than "provide[] transportation to-and-from the work site" and thus that a shuttle pickup site is not itself a work site. (ECF No. 26 at 14.) Plaintiffs contend, in response, that "when the employer requires employees to meet at an employer-owned or controlled location where they are required to get on employer-controlled shuttle buses because those shuttles are the only way employees can access the employer's gold mines, everything after the employee arrives at the shuttle pick-up location is compensable under Nevada law." (ECF No. 38 at 8.) The Court ultimately agrees with Defendants.

Plaintiffs allege (1) they were required to meet at parking lots owned or leased by NGM; (2) where third-party buses contracted by NGM picked them up and transported them to mines—sometimes many hours away—and later dropped them off; and (3) they were prohibited from using their own vehicles or other forms of transportation to enter their job sites. (ECF No. 1 at 2, 4, 7-10.) Besides asserting that they were required to present employee identification badges when they boarded the shuttles, Plaintiffs do not allege any facts suggesting that they were required to perform specific tasks for NGM once on board, or for example, required to undergo regular trainings during transit. (ECF Nos. 1, 47, 48.) At the Hearing, Plaintiffs' counsel represented that they are unaware of the exact restrictions placed on employees riding the bus, but although Plaintiffs were obligated to follow workplace rules on the shuttles, "[t]here's no allegation

1    in the Complaint . . . that they have to review mine charts" or do similar tasks related to

2    their employment. (ECF Nos. 48, 49.)

3        Plaintiffs rely heavily on the fact that NGM's policy made use of the shuttle

4    system mandatory. Indeed, Plaintiffs' counsel acknowledged at the Hearing that the

5    calculus would change if NGM's shuttles were merely optional. (ECF Nos. 48, 49.)

6    Here, Plaintiffs suggest that because shuttle transport is imposed "at the direction of the

7    employer" and instituted for NGM's convenience, it is compensable work under Nevada

8    law. (ECF No. 38 at 6-8.) They point to Nevada's wage-hour laws broadly requiring

9    compensation for both scheduled and unscheduled work hours. *See* NRS § 608.016;

10   NAC § 608.115(1) (requiring payment to employees for "all time worked…*at the*

11   *direction of the employer*" including outside of scheduled hours) (emphasis added). In

12   addition, they argue that the definition of "work" in Nevada remains consistent with the

13   federal understanding established in *Tennessee Coal, Iron & R.R. Co.*, 321 U.S. 590

14   (1944), predating the Portal-to-Portal Act, under which work is defined as "physical or

15   mental exertion (whether burdensome or not) controlled or required by the employer

16   and pursued necessarily and primarily for the benefit of the employer and his

17   business[.]" *Cadena v. Customer Connexx LLC*, 51 F.4th 831, 836-37 (9th Cir. 2022)

18   (quoting *Tennessee Coal*, 321 U.S. at 598).[14]

19       But Plaintiffs' effort to derive a favorable definition of work applicable here rests

20   on a strained reading of the relevant statutes. To start, while NRS § 608.016 and NAC §

21   608.115(1) mandate compensation for "each hour worked" and "all time worked at the

22   direction of the employer" they do not, by their plain language, address whether an

23   activity *is* "work" in the first place. Meanwhile, as the Court has already discussed, the

24   most direct articulation of how travel time should be treated is set out in NAC § 608.130,

25   which *does* explicitly restrict the types of activities which can be rightly "considered time

26

27       [14]While *Tennessee Coal* predates the Portal-to-Portal Act, Plaintiffs emphasize
     that the Portal-to-Portal Act did not change the definition of work, but only relieved
28   employers from having to compensate "preliminary" or "postliminary" activities unless
     they are "integral and indispensable" to the employee's principal activity.

worked." Plaintiffs contend that NAC § 608.130(2)(b) is meant to exclude only "time spent strictly commuting." But nothing in the language of NAC § 608.130 suggests that, when an employer requires an employee to take a certain form of transportation to their job site, travel which would otherwise undeniably be excluded from the definition of compensable work automatically becomes work, even when no other employer-directed activities occur during transit.[15] Similarly, even assuming the framing of "work" in *Tennessee Coal*, 321 U.S. at 598, is generally applicable in Nevada state-law claims, the Court will not apply that broad definition to wholly undercut specific provisions of Nevada law which are *meant* to narrow the contours of compensable work in the state. Moreover, even if the Court considers Plaintiffs' focus on shuttle time as an activity occurring to some extent "at the direction of the employer," it is significant that here, in contrast to other kinds of unscheduled work hours, Plaintiffs would inevitably need to travel to- and from- work regardless of NGM's shuttle policy.

In short, the Court finds that without more facts suggesting that work-related activities occur at the shuttle pickup sites or on the buses, Plaintiffs' allegations are insufficient to suggest that the pickup sites qualify as a place of work. It is true that, as defense counsel acknowledged at the Hearing, a shuttle pickup zone *could* conceivably qualify as a work site if, taken together, sufficient facts support that employees are required to perform work activities there. (ECF Nos. 47, 48.) No such facts are alleged here, and the mandatory nature of the shuttle policy is not enough on its own. But because the Court cannot conclude that amendment of the shuttle-time claims would be

---

[15]At the Hearing, Plaintiffs' counsel also pointed to NAC § 608.130(2)(a)(2) to argue that, because the shuttle-time policy is solely for NGM's own convenience and not for the convenience of NGM employees, it should be considered time worked. (ECF Nos. 47, 48.) But NAC § 608.130(2)(a)(2) functions to distinguish one of two limited subsets of travel which constitute work—travel where "the employee is providing transportation for another employee on behalf of an employer who offers transportation for the convenience of his employees"—from the broader category of non-work travel under NAC § 608.130(2)(b). Those are not the circumstances here, and NAC § 608.130(2)(a)(2) does not support the broader proposition that any transportation not offered solely for the convenience of employees must, without more facts, be time worked. Indeed, the narrow construction of this subsection weighs against that reading.

futile, it grants Plaintiffs leave to amend to state additional facts demonstrating that shuttle pickup zones—and/or shuttles themselves—constitute places of work under Nevada law.

### C.    Minimum Wage Claims

NGM next argues that Plaintiffs cannot state viable minimum wage claims under Nevada law because their average hourly rate exceeded Nevada's minimum wage. (ECF No. 26 at 15-19.) Defendant asserts, here, that the Court must apply the "workweek method"—the standard method applied for FLSA claims—to calculate whether a minimum wage violation has occurred. (*Id.*) Under the workweek method, "the total wages paid to an employee during an entire workweek is divided by the total number of hours worked by that employee in the same workweek." (ECF No. 38 at 10.) *See Sullivan v. Rivera Holdings Corp.*, No. 2:14-cv-00165-APG-VCF, 2014 WL 2960303, at *1 (D. Nev. June 30, 2014) (noting that under FLSA's calculation scheme, there is no violation "[i]f the total wage paid to an employee in any given workweek divided by the total hours worked that week equals or exceeds the applicable minimum wage"). Plaintiffs counter that the Court should decline to apply the FLSA's workweek method because Nevada law, including under the Minimum Wage Amendment ("MWA") set out in Article 15 of the Nevada Constitution, instead "ties the required [minimum] payment to the *individual hour worked*." (ECF No. 38 at 10.) *See Porteous v. Capital One Servs. II, LLC*, 809 F. App'x. 354, 357-58 (9th Cir. 2020) (interpreting minimum wage violation based on individual hours); Nev. Const. art. 15, § 16 (providing that "each employer shall pay a wage to each employee of not less than the hourly rates set forth in this section). Plaintiffs argue that because Plaintiffs were not paid *any* wages for their pre- and post-shift hours arranging tools and gear and on NGM shuttles, they have properly stated Nevada minimum wage claims. The Court agrees with Plaintiffs.

As a preliminary matter, Plaintiffs do not dispute that if the Court applies NGM's proposed workweek method—considering only whether Plaintiffs' weekly compensation exceeded Nevada's minimum hourly wage of approximately $12 when averaged across

1  total compensated and uncompensated hours—they cannot support their minimum

2  wage claims. (ECF Nos. 48, 49.) *See Sullivan*, 2014 WL 2960303, at *1. NGM properly

3  notes that "Plaintiffs' hourly rate [averaged across alleged uncompensated hours] was

4  $25.57, more than double the minimum wage [of $12]" during both four- and five-day

5  workweeks. (ECF No. 26 at 17-18.)[16] On the other hand, there is no question that if the

6  Court takes Plaintiffs' proposed approach and considers whether they received

7  minimum wage for *individual hours* worked, Plaintiffs have adequately supported

8  minimum wage claims by alleging they received $0 in compensation for the time they

9  spent dealing with equipment, tools and clothing before and after their shifts.[17]

10        To determine which approach to apply here, the Court must consider whether the

11  Nevada Supreme Court has signaled its adoption of either method. *See Nelson v. Wal-*

12  *Mart Assocs., Inc.*, No. 3:21-cv-00066-MMD-CLB, 2022 WL 394736, at *4 (D. Nev. Feb.

13  9, 2022) (citing *Kaiser v. Cascade Capital, LLC*, 989 F.3d 1127, 1131-32 (9th Cir.

14  2021)) (noting that where the Nevada Supreme has not decided an issue, the Court

15  must "predict how the highest state court would decide the [state law] issue using

16  intermediate appellate court decisions, decisions from other jurisdictions, statutes,

17  treatises, and restatements as guidance"). *See also Terry v. Sapphire Gentlemen's*

18  *Club*, 336 P.3d 951, 956 (Nev. 2014) (noting that the Nevada Supreme Court "has

19  signaled its willingness to part ways with the FLSA where the language of Nevada's

20  statutes has so required"); *Thomas v. Nevada Yellow Cab Corp.*, 327 P.3d 518, 522

21

22  ───────────────

23  [16]In its Motion, NGM calculates that based on an estimated $35.51 hourly rate for officially scheduled shift hours, Plaintiffs' weekly compensation totaled $1,704.48 for a

24  four-day workweek and $2,130.60 for a five-day workweek. Taking into account allegedly uncompensated hours, NGM estimates that Plaintiffs worked 66 hours and 40

25  minutes during a four day work week, and 83 hours and 20 minutes during a five day work week, assuming that Plaintiffs had no meal breaks and spent 15 to 45 minutes at

26  the beginning and end of the work day dealing with protective clothing and equipment and 1 hour and 20 minutes commuting each direction on NGM's shuttles. (ECF No. 26

27  at 17-18.)

28  [17]Because the Court dismisses Plaintiffs' shuttle-time claims, their remaining state claims are limited to other pre- and post-shift activities.

1  (2014) ("[O]ur recent precedents have established that we consider first and foremost
2  the original public understanding of constitutional provisions . . . .").

3      Plaintiffs point primarily to *Porteous*, 809 F. App'x. 354, where the Ninth Circuit
4  concluded that "[a]bsent contrary authority from the Nevada Supreme Court . . . the
5  MWA is best interpreted to guarantee a minimum wage for each individual hour worked,
6  rather than as an average over a workweek." *Id.* at 358 (reasoning that under NRS §
7  608.016, Nevada law requires payment "for each hour that the employee works" and
8  thus ties compensation directly to individual hours worked, whereas the FLSA uses the
9  language "$[ ] an hour"). In *Nelson*, 2022 WL 394736, this Court reached the same
10  conclusion as the *Porteous* court. Defendants in that case argued that plaintiff Wal-Mart
11  employees could not state a claim for unpaid pre-shift activities under the MWA
12  because their hourly rate was above minimum wage. *See Nelson*, 2022 WL 394736, at
13  *3-5. This Court was "unpersuaded that Nevada law permits averaging unpaid overtime
14  with compensated regularly scheduled work to provide cover for employers who do not
15  pay minimum and overtime wages." *Id.* at *5.

16      NGM asserts that Plaintiffs' emphasis on *Porteous* is misplaced in light of the
17  Nevada Supreme Court's post-*Porteous* decision application of an averaging method in
18  *A Cab, LLC v. Murray*, 501 P.3d 961 (Nev. 2021) (*en banc*).[18] In *A Cab*, plaintiffs
19  representing a class of taxicab drivers brought suit against their employer for MWA
20  violations. *See* 501 P.3d at 967 (2021). On appeal, the Nevada Supreme Court
21  analyzed the district court's calculation of damages and noted that "[i]n theory, minimum
22  wage damages are simple to calculate: multiply the hours worked in a pay period by the
23  applicable minimum hourly wage to calculate the minimum amount due, then subtract

24

25  _____

26      [18]Although this Court's decision in *Nelson* post-dates *A Cab* by several months,
27  as NGM notes, "neither the parties nor the Court in Nelson had the benefit of the
    Nevada Supreme Court's *A Cab* guidance at the time the Nelson briefing was
28  completed." (ECF No. 41 at 6.)

1    the actual pay received to determine whether a deficiency exists."[19] *Id.* at 967. As was

2    relevant to the damages calculation, *A Cab*'s wage information and data was recorded

3    in a combination of electronic shift- and wage- records and handwritten "trip sheets." *Id.*

4    The *A Cab* court found that the district court properly calculated damages, even when it

5    estimated and averaged missing figures to compensate for unwieldy data. *See id.*

6        While *A Cab* includes no language expressly adopting the FLSA's workweek

7    method, NGM argues that A Cab's reasoning implicitly rests on that method and

8    constitutes a clear mandate from the state high court. But a careful review of *A Cab*

9    reveals meaningful differences from the instant action which counsel against deducing

10   from it that the workweek method should be applied to the minimum wage claims here.

11   Most significantly, where Plaintiffs in the instant action were paid at a specified rate on

12   an hourly basis, the taxi drivers in *A Cab* were paid in a different manner, which

13   included commissions and tips, as well as a minimum wage subsidy. *See id.* at 967-72.

14   *See also* App. Brief, *A Cab, LLC v. Murray*, No. 77050 (Nev. Sup. Ct. Aug. 5, 2020)

15   (noting that A Cab "supplemented drivers' income [from rides]" to reach minimum

16   wage); NRS § 706.8844 (requiring drivers to keep a daily trip sheet recording times and

17   fares for each trip). At the Hearing, NGM's counsel acknowledged that A Cab

18   employees received "multiple categories [of pay] all shuffled together," even if

19   _____

20       [19]The *A Cab* court determined that this is indeed how calculations were
     performed by the lower court to determine Plaintiffs' damages resulting from violations
21   during a more recent years of employment; "A Cab provided the drivers with its own
     computerized pay and hour records, and the drivers' expert simply entered that data
22   into a spreadsheet . . . ." *Id.* at 971. For an earlier period, however, A Cab provided
     significantly less detailed information: "The drivers were given data, in electronic
23   format, for the wages paid and the number of shifts worked," but "A Cab failed to provide
     computed hours worked data," instead "provid[ing] copies of the drivers' handwritten
24   'tripsheets,' which reflected the hours actually worked during each shift." *Id.* at 967. For
     this earlier period, the "drivers' expert calculated the average hours per shift using the
25   data [across the time period] and multiplied that estimated average by both the number
     of shifts per each pay period and the minimum wage per hour to determine the wages
26   that should have been paid for each pay period." *Id.* The Nevada Supreme Court
     concluded that although the drivers could have ultimately determined hours worked
27   from what was provided in rough form, the district court's approximation of damages
     based on estimated hours-per-shift was appropriate. *See id.*

28

1   "commission was only part of it." (ECF Nos. 48, 49.) The distinction matters, because

2   NAC § 608.115(2) explicitly provides that "[i]f an employer pays an employee by salary,

3   piece rate or any other wage rate *except for a wage rate based on an hour of time*, the

4   employer shall pay an amount that is at least equal to the minimum wage when the

5   amount paid to an employee in a pay period is divided by the number of hours worked

6   by the employee during the pay period" (emphasis added). In other words, while NAC §

7   608.115(2) plainly condones an averaging method for employees who are *not* paid by

8   the hour, it sets hourly workers apart.

9       Indeed, in declining to apply the workweek method to Nevada claims, the

10  *Porteous* court specifically considered the fact that NAC § 608.115(2) "exempt[s] hourly

11  wage earners from a time-averaging rule applicable to salary and other workers,"

12  viewed alongside the emphasis on compensation "for each hour the employee works"

13  set out in statute. *Porteous*, 809 F. App'x. at 359 (citing NRS § 608.016; *id.* §

14  608.018(1)(b)). *See also In re: Amazon.Com, Inc. Fulfillment Ctr. Fair Lab. Standards*

15  *Act (FLSA) & Wage & Hour Litig.,* 905 F.3d 387, 407 (6th Cir. 2018) (reasoning that

16  "[t]he import of § 608.115(2) is clearly that only the minimum wages of non-hourly paid

17  employees may be calculated on a per-pay-period basis to determine whether there is a

18  minimum wage violation"); *Nelson*, 2022 WL 394736, at *5 ("NAC §

19  608.115…undermines Defendant's argument, since the provision expressly exempts

20  hourly workers like Nelson and the other Opt-in Plaintiffs from the calculation

21  scheme.").[20]

22      In short, the *A Cab* court was tasked only with reviewing the type of question

23  NAC § 608.115(2) implicitly anticipates: where multiple types of pay are "shuffled

24  _____

25      [20]The Court is not persuaded by NGM's proposed rationales for interpreting NAC
    § 608.115(2) differently. At the Hearing, for example, NGM's counsel pointed to NRS §§
26  608.40 and 608.050, which provide penalties for failure to pay an employee after
    termination, and calculate those penalties based on a daily rate, to suggest that an
27  averaging method is implied to be appropriate throughout Nevada law. (ECF Nos. 48,
    49.) But the use of an averaging methodology in the unique context when an employee
28  has ceased working—where estimating figures is a necessity—is different from the
    context here, and does not translate to an overarching rule applicable in this case.

together," how should a court identify a MWA violation and calculate damages? That is not the question here, where Plaintiffs are hourly employees for whom an averaging method is not explicitly sanctioned, and for whom statutory language requiring payment for "each hour worked" has its clearest application.

Moreover, the Nevada Supreme Court has separately maintained—including in post-*A Cab* decisions—that minimum wage claims are similar to wage claims for unpaid hours. *See, e.g.*, *Martel v. HG Staffing, LLC*, 519 P.3d 25, 30 (Nev. 2022) (reasoning that NRS § 608.016 claims for unpaid wages are "analogous to claims under the MWA because, if an employee is not paid wages, they have not received the minimum wage" and noting that "[b]ecause the Martel employees are seeking wages that were allegedly not paid, i.e., they received less than the minimum wage, they are functionally asserting claims under NRS 608.260 and the MWA"). And the state high court has repeatedly emphasized that the MWA is broad in scope and has particular force as a publicly-enacted mandate. *See, e.g.*, *Doe Dancer I v. La Fuente, Inc.*, 481 P.3d 860, 872 (Nev. 2021) (noting that the MWA "expressly and broadly defines employee"); *Terry*, 336 P.3d at 955 (noting that the MWA reflects "voters' wish that more, not fewer, persons would receive minimum wage protections"); *Thomas*, 327 P.3d at 521 (eliminating the previous statutory minimum wage exemption for taxi cab workers following enactment of the MWA and emphasizing the "principle of constitutional supremacy"). The Court also finds unconvincing NGM's argument that the workweek method is necessary from a "practical standpoint," because those who make more than minimum wage and are not part of the class the MWA is intended to protect. (ECF Nos. 48, 49.) If an employee is entitled to minimum wage for each hour worked, all hourly employees who are not paid for any given hour benefit from a calculation based on individual hours.

Taken together, these principles weigh against an overbroad interpretation of *A Cab* as fundamentally altering the reasoning in *Porteous*. Because the Court remains unpersuaded that Nevada law permits use of an averaging method to provide cover for

1  employers who do not pay minimum and overtime wages to hourly employees, the

2  Court denies NGM's Motion.

3  **D.    Statute of Limitations as to Wieben's Claims**

4  Finally, NGM asserts that many of Wieben's claims are barred by a two-year

5  statute of limitations.[21] (ECF No. 26 at 19-20.) Defendant attaches, as an exhibit to the

6  Motion, Wieben's notice of resignation form indicating his intention to resign on October

7  18, 2022. (ECF No. 26-1.) Wieben filed his Complaint on October 24, 2024 – apparently

8  several days beyond the two-year mark, based on the handwritten date on the notice.

9  The Court declines to dismiss Wieben's claims on statute of limitations grounds.

10  To start, Wieben himself alleges in the Complaint only that he worked at NGM

11  "through approximately October 2022" (ECF No. 1 at 4), and NGM bases its argument

12  that Wieben specifically ceased work on October 18, 2022, wholly on the extrinsic

13  resignation notice (ECF No. 26-1). "Generally, a district court may not consider any

14  material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Anderson v.*

15  *Albertson's LLC*, 679 F. Supp. 3d 1049, 1052-53 (D. Nev. 2023) (quoting *Hal Roach*

16  *Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990)). The

17  Court may, however, consider "matters of public record" and other extrinsic documents,

18  "if the documents' authenticity . . . is not contested and the plaintiff's complaint

19  necessarily relies on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir.

20  2001) (internal quotations omitted). *See also Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d

21  1067, 1077 n. 6 (C.D. Cal. 2002) (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682

22  (9th Cir. 1980)) (noting that dismissal on statute of limitations grounds is only

23  appropriate "if the running of the statute is apparent on the face of the complaint or in

24  documents outside of the pleadings that the Court is willing to consider"). Wieben's

25  

26      [21]NGM acknowledges, in a notice of errata, that "Wieben's claims under the
FLSA and NRS §§ 608.020-050 are subject to a two-year statute of limitations, while
27  Plaintiffs' claims under NRS § 608.016, NRS § 608.018, and the Nevada Constitution
are subject to a four-year statute of limitations under a superseding statute." (ECF No.
28  42.)

1   handwritten resignation notice is not a matter of public record, and Wieben does not rely

2   on the notice in pleading his claims. The Court finds it premature to conclude, based on

3   incomplete supplemented facts beyond the face of the Complaint, that Wieben's claims

4   are time barred.

5          Even assuming Wieben resigned on the date indicated in the extrinsic

6   resignation notice, additional facts may nevertheless bear on whether his claims fall

7   within the statute of limitations. In Nevada, a plaintiff may bring a civil action "at any time

8   within 2 years after the employer's failure" to pay "wages, compensation or salary . . . .

9   in accordance with the requirements set forth in [NRS §§] 608.020 to 608.050." NRS §

10  608.135. And as Plaintiffs note, under NRS § 608.030, an employer is not required to

11  pay an employee after resignation until the day he "would have regularly been paid the

12  wages or compensation," or "seven days after he resigns . . . whichever is earlier."

13  Here, the date on which final payment was due to Wieben is not clear.[22] *See In re*

14  *Lowe's Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig.*, 517 F. Supp. 3d

15  484, 509 (W.D.N.C. 2021)) (applying Nevada law and finding, where a plaintiff alleged

16  they worked at Lowe's "from March 2013 until February 2018," that "even assuming [the

17  plaintiff] worked … on the last possible date (February 28, 2018), his cause of action

18  would have accrued, at the latest, seven days later . . . .").

19         Moreover, with regard to his surviving FLSA claims, the Court finds that Wieben

20  has sufficiently pled willfulness. *See Coyne*, 2022 WL 4379155, at *2 ("The FLSA 'has a

21  two-year statute of limitations for claims unless the employer's violation was 'willful,' in

22  which case the statute of limitations is extended to three years.") (quoting *Flores v. City*

23  *of San Gabriel*, 824 F.3d 890, 895 (9th Cir. 2016)). "At the pleading stage, a plaintiff

24  need not allege willfulness with specificity." *Id.* (citing *Rivera v. Peri & Sons Farms, Inc.*,

25  735 F.3d 892, 902-03 (9th Cir. 2013)). NGM contends that Plaintiff cannot show

26

27         [22]In its reply, NGM includes a pay slip ostensibly showing that Wieben was last paid on October 18, 2022. (ECF No. 41-1.) The Court will not consider this document attached, for the first time, to the reply.

28

1    willfulness because "no Nevada case or other law has ever imposed an obligation on

2    Nevada employers to compensate employee commute time." (ECF No. 41 at 9.) But

3    while the Court has found that Plaintiffs fail to state shuttle-time claims regarding,

4    Plaintiffs have sufficiently alleged that they were not properly compensated for pre- and

5    post-shift time handling tools, equipment, and protective gear. Those facts, combined

6    with allegations that Plaintiffs did not clock in and out and NGM made no effort to record

7    their actual daily work, are adequate at this stage to support willfulness.

8        Accordingly, the Court denies NGM's request to dismiss Wieben's claims as time

9    barred.

10   **IV.    CONCLUSION**

11       The Court notes that the parties made several arguments and cited to several

12   cases not discussed above. The Court has reviewed these arguments and cases and

13   determines that they do not warrant discussion as they do not affect the outcome of the

14   Motion before the Court.

15       It is therefore ordered that Nevada Gold Mine's motion to dismiss (ECF No. 26) is

16   granted in part and denied in part. The Motion is granted with respect to Plaintiffs'

17   shuttle-time claims. The Motion is denied with respect to Plaintiffs remaining claims.

18       It is further ordered that Plaintiffs may file an amended complaint within 15 days

19   to correct the deficiencies in their shuttle-time claims identified in this order.

20       It is further ordered that, if Plaintiffs do not file an amended complaint, this action

21   will proceed on Plaintiffs' FLSA and Nevada law claims related to alleged

22   uncompensated pre- and post-shift work not including shuttle-time. (ECF No. 1.)

23       DATED THIS 27th Day of June 2025.

24

25   _____

26   MIRANDA M. DU
     UNITED STATES DISTRICT JUDGE

27

28