Esther C. Rodriguez
Nevada State Bar No. 006473
**RODRIGUEZ LAW OFFICES, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
esther@rodriguezlaw.com

Richard J. (Rex) Burch*
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

Michael A. Josephson*
Texas State Bar No. 24014780
Richard M. Schreiber*
Texas State Bar No. 24056278
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
mjosephson@mybackwages.com
rschreiber@mybackwages.com

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs and the Hourly Employees*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| KYLE WIEBEN and AUSTIN STOCKSTILL, Individually and On Behalf of Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NEVADA GOLD MINES LLC,<br><br>Defendant. | Case No. 3:24-cv-00575-MMD-CSC<br><br>**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*);<br><br>(2) Failure to Pay for All Hours Worked Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.016).<br><br>(3) Failure to Pay Minimum Wages in Violation of the Nevada Constitution;<br><br>(4) Failure to Pay Overtime under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.018); and<br><br>(5) Failure to Timely Pay All Wages Due and Owing Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.020-050). |

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

SUMMARY

1.      Kyle Wieben (Wieben) and Austin Stockstill (Stockstill) (collectively, Plaintiffs) bring this class and collective action to recover unpaid wages and other damages from Nevada Gold Mines LLC (NGM) for violations of the Fair Labor Standards Act (FLSA) and Nevada law.

2.      NGM employed Plaintiffs as Hourly Employees (defined below).

3.      NGM pays Plaintiffs and the other Hourly Employees by the hour.

4.      Plaintiffs and the other Hourly Employees regularly work more than 40 hours a workweek.

5.      However, NGM does not pay Plaintiffs and the other Hourly Employees for all their hours worked, including overtime hours.

6.      Rather, NGM requires Plaintiffs and other Hourly Employees to arrive at a designated location (a parking lot owned or leased by NGM) and ride a shuttle bus to their assigned mine each workday, "off the clock," without compensation.

7.      Likewise, NGM requires Plaintiffs and other Hourly Employees to ride the shuttle bus to exit their assigned mine, back to the designated NGM parking lot, "off the clock," without compensation.

8.      This "shuttle policy" imposed by NGM violates Nevada law by depriving Plaintiffs and the other Hourly Employees of wages, including overtime wages, for all hours worked.

9.      Additionally, after shuttling to their designated mine, NGM requires Plaintiffs and the other Hourly Employees to gather tools and equipment necessary to perform their job duties, suit out in protective clothing and safety gear necessary to safely perform their job duties, meet with Hourly Employees ending their shifts, attend "line out" meetings, and begin their principal job duties, "off the clock" prior the start of their scheduled shifts.

10. Likewise, NGM requires Plaintiffs and the other Hourly Employees complete their principal job duties, wash-up, change out of their safety gear and protective clothing, and store their tools and equipment "off the clock" following the end of their scheduled shifts.

11. But NGM does not pay Plaintiffs and the other Hourly Employees for this time before and after their scheduled shifts.

12. Rather, NGM assumes that Plaintiffs and the other Hourly Employees work exactly the amount of time allocated in their pre-scheduled shifts each workday and pays them only for these pre-scheduled hours (NGM's "shift rate pay scheme").

13. NGM likewise does not authorize or permit Plaintiffs and the other Hourly Employees to take meal or rest periods, in violation of NRS § 608.019.

14. Rather, NGM requires them to perform their job duties throughout their shifts.

15. NGM's shift rate pay scheme violates the FLSA and Nevada law by depriving Plaintiffs and the other Hourly Employees of wages, including overtime wages, for all hours worked.

16. Likewise, NGM's shift rate pay scheme violates Nevada Law by depriving Plaintiffs and the other Hourly Employees of earned wages for all hours worked upon termination of their employment.

17. In addition to failing to pay Plaintiffs and the other Hourly Employees for all their hours worked, NGM also fails to pay them overtime at the required premium rate.

18. Instead, NGM pays them non-discretionary production and safety bonuses.

19. NGM knows these bonuses must be, but are not, included in the Hourly Employees' regular rates of pay for overtime purposes (NGM's "bonus pay scheme").

20. NGM's bonus pay scheme violates the FLSA and Nevada law by depriving Plaintiffs and the other Hourly Employees of overtime at rates not less than 1.5 times their regular rates of pay – based on all remuneration – for hours worked in excess of 40 a workweek.

21.     Likewise, NGM's bonus pay scheme violates Nevada law by depriving Plaintiffs and the other Hourly Employees of earned wages for all hours worked upon termination of their employment.

### JURISDICTION & VENUE

22.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

23.     This Court has supplemental jurisdiction of the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

24.     This Court has general personal jurisdiction over NGM because NGM maintains its principal place of business in Elko, Nevada.

25.     Venue is proper because NGM is headquartered in Elko, Nevada, which is in this District. 28 U.S.C. § 1391(b).

### PARTIES

26.     NGM employed Wieben as a Miner 4 in NGM's Goldstrike Mine from approximately January 2018 through October 2022.

27.     NGM employed Stockstill as a Electrician 3 in NGM's Twin Creeks Mine from approximately January 2023 through February 2024.

28.     NGM classified Plaintiffs as non-exempt and paid them by the hour.

29.     NGM subjected Plaintiffs to its shuttle policy, shift rate pay scheme, and bonus pay scheme.

30.     Wieben's written consent is attached as **Exhibit 1**.

31.     Stockstill's written consent is attached as **Exhibit 2**.

32.     Plaintiffs bring this class and collective action on behalf of themselves and other similarly situated NGM employees who were subject to NGM's shuttle policy, shift rate pay scheme, and/or bonus pay scheme.

33.     The FLSA collective of similarly situated employees is defined as:

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

**All hourly miners, electricians, and similar employees who worked for NGM during the past 3 years through final resolution of this action ("FLSA Collective Members").**

34.    Plaintiffs also seek to represent a class under Nevada law pursuant to FED. R. CIV. P. 23.

35.    The Nevada Class of similarly situated employees is defined as:

**All hourly miners, electricians, and similar employees who worked for NGM in Nevada during the past 4 years through final resolution of this action ("Nevada Class Members").**

36.    And Plaintiffs seek to represent a class of shuttle time employees under Nevada law.

37.    The Shuttle Time Class of similarly situated employees is defined as:

**All hourly miners, electricians, and similar employees who worked for NGM in Nevada and who NGM required to ride a shuttle to their designated mine during the past 4 years through final resolution of this action ("Shuttle Class Members").**

38.    The FLSA Collective Members, Nevada Class Members, and Shuttle Class Members are collectively referred to as the "Hourly Employees."

39.    NGM is a Delaware limited liability company headquartered in Elko, Nevada.

40.    Because NGM has entered an appearance, NGM may be served through its counsel of record.

**FLSA COVERAGE**

41.    At all relevant times, NGM has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

42.    At all relevant times, NGM has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

43.    At all relevant times, NGM has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

otherwise working on goods or materials – such as personal protective equipment, tools, drills, computers, tablets, etc. – that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1)

44.     At all relevant times, NGM has had an annual gross volume of revenue made or business done of over $1,000,000 each year.

45.     At all relevant times, Plaintiffs and the other Hourly Employees have been NGM's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

46.     At all relevant times, Plaintiffs and the other Hourly Employees have been engaged in commerce or in the production of goods for commerce.

47.     NGM uniformly subjects Plaintiffs and the other Hourly Employees to its shift rate pay scheme and/or bonus pay scheme.

48.     NGM imposed its shift rate pay scheme and/or bonus pay scheme on the Hourly Employees regardless of any alleged individualized factors, such as specific job title or geographic location.

49.     By subjecting Plaintiffs and the other Hourly Employees to its shift rate pay scheme and/or bonus pay scheme, NGM did not pay them for all the hours they worked, including overtime hours worked in excess of 40 a workweek.

50.     NGM's shift rate pay scheme and bonus pay scheme therefore violate the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

51.     NGM bills its Nevada mines as "the single largest gold-producing complex in the world" with "measured and indicated gold resources [of] 41 million ounces."[1]

52.     To meet its business objectives, NGM hires workers, like Plaintiffs and the other Hourly Employees.

---

[1] https://www.barrick.com/English/operations/nevada-gold-mines/default.aspx (last accessed July 9, 2025).

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

53.    While exact job titles and precise job duties may differ, Plaintiffs and the other Hourly Employees are all subject to NGM's same or similar illegal policies – its shuttle policy, shift rate pay scheme, and/or bonus pay scheme – while performing the same or similar work.

54.    For example, Wieben worked for NGM as a Miner 4 in NGM's Goldstrike Mine in Eureka County, Nevada from approximately January 2018 through October 2022.

55.    As a Miner 4, Wieben's job duties included drilling, operating roof bolting machines, and operating and guiding loading machines to remove rock from "stopes" (vertical tunnels) in NGM's underground gold mine.

56.    Stockstill worked for NGM as an Electrician 3 in its Twin Creeks Mine in Humboldt County, Nevada from approximately January 2023 through February 2024.

57.    As an Electrician 3, Stockstill's job duties included maintaining and repairing pumps, motors, and various other machinery, replacing filters, calibrating storage tanks, and fixing wiring and lighting issues.

58.    Plaintiffs' job duties likewise included donning and doffing safety gear and protective clothing, gathering and storing tools and equipment, meeting with counterparts ending their shifts to determine pressing concerns, attending line out meetings to get their assignment(s) for the day, and washing-up on NGM's premises, "off the clock," before and after their scheduled shifts.

59.    NGM likewise required Plaintiffs to meet at a location designated by NGM – a parking lot owned or leased by NGM – and ride shuttle busses designated and provided by NGM to and from NGM's mines.

60.     And NGM has signs posted clearly demarcating it's the parking lots premises and prohibiting the general public from accessing the parking lots, designating the parking lots for employee use only, and prohibiting certain items:



61.     NGM's requirement that Plaintiffs ride the NGM provided shuttle bus was for its own benefit because it does not want and/or does not have the capacity to build the necessary infrastructure, including, roads and parking lots, to handle the traffic of hundreds or thousands of miners simultaneously driving to and from its mines. And, even if NGM could build this infrastructure, it does not want sleep deprived miners—due to working long, grueling hours underground for NGM in remote places—causing car wrecks which could impede or stop altogether the flow of traffic to/from the mines, harm NGM employees, and/or potentially result in personal injury/wrongful death liability for NGM.

62.     Additionally, NGM does not want sleep deprived miners working in its mines operating heavy machinery increasing the risk of workplace incidents leading to personal injury, death, and work stoppage in an already hazardous underground work environment.

63.     Indeed, NGM's policy requiring Plaintiffs to take the shuttle bus to/from the mines facilitates its own business objectives.

64.     NGM required Plaintiffs to be at the NGM designated location at a certain time.

65.     NGM's shuttle buses operated on NGM's strict schedules.

- 8 -
FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

66. Indeed, NGM's shuttle buses leave promptly at the scheduled time every day.

67. NGM did not permit Plaintiffs to travel to NGM's mines in their personal vehicles.

68. If Plaintiffs missed the NGM bus, NGM did not permit them to work and disciplined them.

69. NGM would discipline and/or terminate Plaintiffs' employment if they attempted to drive their personal vehicles to NGM's mines.

70. Once on the NGM shuttle bus, Plaintiffs were subject to NGM company requirements and faced discipline and/or termination for violations of those requirements.

71. And workplace announcements and/or instruction are sometimes delivered on the buses.

72. NGM classified Plaintiffs as non-exempt employees and paid them on an hourly basis.

73. NGM Paid Wieben approximately $38.50 an hour.

74. NGM Paid Stockstill approximately $35.51 an hour.

75. Throughout their employment, Plaintiffs typically worked approximately 12 hours a day for 4 to 5 days a workweek "on the clock."

76. Plaintiffs typically worked 48 to 60 hours a workweek "on the clock."

77. Likewise, the other Hourly Employees generally work approximately 12 hours a day for 4 to 5 days a week, 48 to 60 hours a workweek, "on the clock."

78. But throughout their employment, NGM did not pay Plaintiffs and the other Hourly Employees for all their hours worked.

79. Instead, NGM subjected Plaintiffs and the other Hourly Employees to its shift rate pay scheme and simply assumed that Plaintiffs and the other Hourly Employees worked exactly the number of hours NGM scheduled them to work.

80. Plaintiffs did not clock in and out or otherwise record their actual hours worked.

81. Rather, NGM pre-filled Plaintiffs' hours worked each workday and workweek with Plaintiffs' scheduled shifts.

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

82.    Likewise, NGM pre-filled the other Hourly Employees' hours worked each workday and workweek with their scheduled shifts.

83.    NGM did not track the number of hours Plaintiffs and the other Hourly Employees actually worked in a given workday or workweek.

84.    And NGM required Plaintiffs to dress out in their protective clothing and safety gear (including hard hat, head lamp, reflective shirt, pants, and/or coveralls, ear protection, steel toed boots, safety glasses, gloves, respirator, SCSR, tracker, mining belt), gather tools and equipment (including tool set, wrenches, pliers, hammers, spare parts, wires, etc.) fundamentally necessary to performing their jobs, meet with outgoing counterparts, and attend line out meetings, prior to their scheduled shifts, all "off the clock," and without compensation.

85.    This took Plaintiffs approximately 15 to 45 minutes each workday.

86.    Plaintiffs could not perform their job duties in accordance with NGM's policies, procedures, and expectations without this protective clothing, safety gear, tools, equipment, and meetings.

87.    Plaintiffs could not safely perform their job duties in accordance with NGM's policies, procedures, and expectations without this protective clothing, safety gear, tools, equipment, and meetings.

88.    Indeed, much of the safety gear Plaintiffs must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

89.    The donning of protective clothing and safety gear, gathering of tools and equipment, and meeting attendance are therefore integral and indispensable work duties for Plaintiffs.

90.    Likewise, NGM required Plaintiffs to remove their safety gear and protective clothing, store their tools and equipment, and wash up at the end of their scheduled shifts, all "off the clock" and without compensation.

91.    This took Plaintiffs approximately 15 to 45 minutes each workday.

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

92.    Plaintiffs could not perform their job duties in accordance with NGM's policies, procedures, and expectations without removing their safety gear and protective clothing, storing their tools and equipment, and washing up.

93.    Plaintiffs could not safely perform their job duties in accordance with NGM's policies, procedures, and expectations without removing their safety gear and protective clothing, storing their tools and equipment, and washing up each day.

94.    The removal of their safety gear and protective clothing, storing their tools and equipment, washing up, are therefore integral and indispensable work duties for Plaintiffs.

95.    But under its shift rate pays scheme, NGM did not compensate Plaintiffs for the same.

96.    Thus, because of its shift rate pay scheme, NGM failed to pay Plaintiffs wages for all hours worked, including overtime wages for all their overtime hours worked, in violation of the FLSA and Nevada Law.

97.    And due to its shift rate pay scheme, NGM failed to pay Plaintiffs all their earned wages upon termination of employment, in violation of Nevada law.

98.    NGM likewise subjected Plaintiffs to its shuttle policy that required them to work significant time "off the clock" without compensation.

99.    Specifically, NGM required Plaintiffs to travel to designated locations – parking lots owned or leased by NGM – where third-party shuttle buses contracted by NGM picked up Plaintiffs and transported them to their assigned mines.

100.    Likewise, these same third-party shuttle buses transported Plaintiffs from the mines back to their designated pick-up location after each shift.

101.    NGM prohibited Plaintiffs from traveling to and from their designated mine using their own vehicles or other personal means of transportation.

102.    Under NGM policy, Plaintiffs could not access or enter the jobsite unless they took the shuttle buses.

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

103.    In other words, NGM required them to shuttle to and from the mines with other NGM employees as a condition of their employment.

104.    And to board the mandatory shuttles, Plaintiffs would need to be at the designated location by a time NGM scheduled or risk missing the shuttle and being disciplined—including up to termination of employment.

105.    To board these mandatory shuttles, Plaintiffs had to present their employee ID badges.

106.    And NGM controlled Plaintiffs' activities once on the bus by enforcing its workplace rules and policies by disciplining and/or terminating employees who violated such rules or policies.

107.    Only NGM employees are permitted to ride on the buses.

108.    NGM's requirement that Plaintiffs ride the NGM provided shuttle bus was for its own benefit because it does not want and/or does not have the capacity to build the necessary infrastructure, including roads and parking lots to handle the traffic of hundreds or thousands of miners at its mines.

109.    Indeed, the roads to and from some mines are so limited as to require a single bus to drop off miners at more than one mine, on the same route.

110.    Thus, some miners must get on the bus at a designated parking lot, ride the bus to the first mine on the route, wait while miners get off at the first mine, and continue riding the bus from the first mine to finally be dropped off at the second mine on the route.

111.    And, even if NGM could build the necessary infrastructure, it does not want sleep deprived miners—due to working long hours of physically and mentally draining labor for NGM in its remote underground mines—causing car wrecks which could stop the flow of traffic to/ from the mines, harm NGM employees, and potentially result in personal injury/wrongful death liability for NGM.

112.    Additionally, NGM does not want sleep deprived miners working with heavy machinery in its already hazardous underground mines, elevating the risk of workplace incidents leading to personal injury, death, and work stoppage.

113.    Indeed, NGM's policy requiring Plaintiffs take the shuttle bus to/from the mines facilitates its own business objectives.

114.    Plaintiffs spent approximately an hour and 20 minutes to the mine each workday and an hour and 20 minutes back from the mine each workday, for a total of 2 hours and 40 minutes each workday (10 hours and 30 minutes to 13 hours and 20 minutes a workweek) shuttling to and from the mines, with some buses stopping at multiple mines to drop off Hourly Employees.

115.    But under NGM's policy, Plaintiffs shifts did not include any time Plaintiffs spent riding to the mines on mandatory shuttle buses.

116.    In other words, NGM required Plaintiffs to work "off the clock," shuttling to and from their designated mine before and after each shift.

117.    And under its shuttle policy, NGM did not pay Plaintiffs for this "off the clock" work required each workday.

118.    As a result of its shuttle policy, NGM failed to pay Plaintiffs wages for all hours worked, including overtime wages for all overtime hours worked, including those worked "off the clock," in violation of Nevada law.

119.    And NGM did not authorize or permit Plaintiffs to take meal or rest periods. *See* Nev. Rev. Stat. § 608.019 and Nev. Admin. Code § 608.145.

120.    Rather, NGM required Plaintiffs to perform their regular job duties throughout their shifts.

121.    Further, throughout their employment, NGM paid Plaintiffs according to its bonus pay scheme.

122.    Specifically, NGM paid Plaintiffs non-discretionary bonuses when Plaintiffs exceeded productivity and safety metrics NGM selected.

123.    These non-discretionary bonuses ranged from approximately $300 to $2,000.

124.    NGM knew these bonuses should have been, but were not, included in Plaintiff's regular rate of pay for overtime purposes.

125.    As a result, NGM failed to pay Plaintiffs overtime at a rate not less than 1.5 times their regular rate of pay – based on all remuneration – for hours worked over 40 a workweek, in violation of the FLSA and Nevada law.

126.    And due to its bonus pay scheme NGM failed to pay Plaintiffs all their earned wages upon termination of employment, in violation of Nevada law.

127.    Plaintiffs and the other Hourly Employees perform their jobs under NGM's supervision and use materials, equipment, and technology NGM approves and supplies.

128.    NGM requires Plaintiffs and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

129.    At the end of each pay period, Plaintiffs and the other Hourly Employees receive wages from NGM that are determined by common systems and methods that NGM selects and controls.

130.    But, just as with Plaintiffs, NGM fails to pay the other Hourly Employees for all their hours worked.

131.    Indeed, NGM subjects the other Hourly Employees to the same or similar shift rate pay scheme it imposed on Wieben and Stockstill.

132.    Specifically, NGM requires the other Hourly Employees to dress out in their protective clothing and safety gear (including hard hat, head lamp, reflective shirt, pants, and/or coveralls, ear protection, steel toed boots, safety glasses, gloves, respirator, SCSR, tracker, mining belt), gather tools and equipment (including tool set, wrenches, pliers, hammers, spare parts, wires, etc.) fundamentally necessary to performing their jobs, meet with counterparts, and attend line out meetings, prior to their scheduled shifts, all "off the clock," and without compensation.

133.    As with Plaintiffs, much of the safety gear the other Hourly Employees must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq.*

134. And NGM requires the other Hourly Employees to remove their safety gear and protective clothing, store their tools and equipment, wash up, at the end of their scheduled shifts, all "off the clock" and without compensation.

135. And like Plaintiffs, this takes the other Hourly Employees approximately 30 minutes to an hour and 30 minutes each workday.

136. And NGM likewise subjected other Hourly Employees to its shuttle policy.

137. Specifically, just as with Plaintiffs, NGM requires other Hourly Employees to travel to designated locations – parking lots owned or leased by NGM – where third-party shuttle buses contracted by NGM pick them up and transport them to their assigned mines.

138. And these same third-party shuttle buses transport the other Hourly Employees from the mines back to their designated pick-up location after each shift.

139. And like Plaintiffs, NGM prohibits the other Hourly Employees from traveling to and from their designated mines using their personal vehicles or other personal means of transportation.

140. Instead, NGM requires them to shuttle to and from the mines with other NGM employees as a condition of their employment, while abiding by NGM rules and policies, subject to disciplinary action up to and including termination.

141. And NGM directed and controlled the other Hourly Employees' activities once on the bus by enforcing its workplace rules and policies and disciplining and/or terminating employees who violate its rules or policies.

142. NGM's requirement that the other Hourly Employees ride NGM provided shuttle buses was for its own benefit because it does not want and/or does not have the capacity to build the necessary infrastructure, including roads and parking lots to handle the increased traffic at its mines.

143. And, even if NGM could, it does not want sleep deprived miners—due to working long hours working physically and mentally taxing jobs for NGM in its remote underground mines—causing car wrecks which could stop the flow of traffic to/ from the mines, harm NGM employees, and potentially result in personal injury/ wrongful death liability for NGM.

144.    Additionally, NGM does not want sleep deprived miners working with heavy machinery in its underground mines, exacerbating the risk of workplace incidents leading to personal injury, death, and work stoppage.

145.    Indeed, NGM's policy requiring the other Hourly Employees take the shuttle bus to/from the mines facilitates its own business objectives.

146.    The other Hourly Employees spend approximately 10 hours and 30 minutes to 13 hours and 20 minutes a workweek shuttling to and from the mines, "off the clock," without compensation.

147.    But, like Plaintiffs, the other Hourly Employees are forced to perform this compensable work "off the clock" before and/or after their scheduled shifts for NGM's predominant benefit.

148.    And, just as with Plaintiffs, NGM does not pay its other Hourly Employees for this work they perform "off the clock" before and after their scheduled shifts.

149.    And, just as with Plaintiffs, these job duties take the other Hourly Employees approximately 30 minutes to an hour and 30 minutes to complete each workday.

150.    NGM fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that NGM does not want performed.

151.    And NGM knows, should know, or recklessly disregards whether Plaintiffs and the other Hourly Employees routinely perform work "off the clock," and without compensation, before and after their scheduled shifts.

152.    Thus, NGM requires, requests, suffers, permits, or allows Plaintiffs and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

153.    Despite accepting the benefits, NGM does not pay Plaintiffs and the other Hourly Employees for the compensable work they perform "off the clock" before and after their scheduled shifts.

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

154.    Thus, under NGM's shift rate pay scheme and shuttle policy, Plaintiffs and the other Hourly Employees are denied wages, including overtime wages for compensable work they perform "off the clock" before and after their scheduled shifts during in violation of the FLSA and Nevada law.

155.    And under NGM's shift rate pay scheme and shuttle policy, Plaintiffs and the other Hourly Employees are denied earned wages upon termination of employment under Nevada law.

156.    And, just as with Plaintiffs, NGM did not authorize or permit the other Hourly Employees to take meal or rest periods. *See* Nev. Rev. Stat. § 608.019 and Nev. Admin. Code § 608.145.

157.    Rather, like Plaintiffs, NGM requires the other Hourly Employees to perform their regular job duties throughout their shifts.

158.    Finally, just as with Plaintiffs, NGM also subjects the other Hourly Employees to its bonus pay scheme.

159.    Specifically, just as with Plaintiffs, NGM pays the other Hourly Employees non-discretionary bonuses if they exceed production and safety metrics NGMs selects.

160.    NGM knows these bonuses must be, but are not, included in the Hourly Employees' regular rates of pay for overtime purposes.

161.    As a result, just as with Plaintiffs, NGM fails to pay the other Hourly Employees overtime at a rate not less than 1.5 times their regular rates of pay – based on all remuneration – for hours worked in excess of 40 a week, in violation of the FLSA and Nevada law.

162.    Likewise, due to its bonus pay scheme NGM fails to pay former Hourly Employees all their earned wages upon termination of employment, in violation of Nevada law.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

163.    Wieben and Stockstill bring their claims as a class and collective action under Section 216(b) of the FLSA and under Nevada law pursuant to Fed. R. Civ. P. 23.

164.    Like Plaintiffs, the other Hourly Employees are victimized by NGM's shuttle policy, shift rate pay scheme, and/or bonus pay scheme.

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

165.    Other Hourly Employees worked with Plaintiffs and indicated they were paid in the same manner, performed similar work, and were subject to NGM's same shuttle policy, shift rate pay scheme, and/or bonus pay scheme.

166.    Based on their experience with NGM, Wieben and Stockstill are aware NGM's shuttle policy, shift rate pay scheme, and/or bonus pay scheme were imposed on the other Hourly Employees.

167.    The Hourly Employees are similarly situated in the most relevant respects.

168.    Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to wages for all hours worked, including overtime wages.

169.    Rather, the Putative Classes are held together by NGM's shuttle policy, shift rate pay scheme, and bonus pay scheme, which systematically deprive Plaintiffs and the other Hourly Employees of proper wages, including required overtime wages, for all hours worked, including those in excess of 40 hours in a workweek.

170.    Therefore, the specific job titles or precise job locations of the Hourly Employees do not prevent class or collective treatment.

171.    NGM's failure to pay these employees "straight time" and overtime wages at the rates required by the FLSA and/or Nevada law results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Hourly Employees.

172.    The Hourly Employees are denied overtime wages at the required premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

173.    NGM's records show the number of hours the Hourly Employees worked "on the clock" each workweek.

174.    The back wages owed to Plaintiffs and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

175.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to NGM's records, and there is no detraction from the common nucleus of liability facts.

176.    Therefore, the issue of damages does not preclude class or collective treatment.

177.    Plaintiff's experiences are therefore typical of the experiences of the other Hourly Employees.

178.    Plaintiff has no interest contrary to or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

179.    Like each Hourly Employee, Plaintiffs have an interest in obtaining the unpaid wages owed under federal and Nevada law.

180.    Plaintiffs and their counsel will fairly and adequately protect the interests of the other Hourly Employees.

181.    Plaintiffs retained counsel with significant experience in complex class and collective action litigation.

182.    A class and collective action is superior to other available means for fair and efficient adjudication of this action.

183.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and NGM will reap the unjust benefits of violating the FLSA and Nevada law.

184.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome.

185.    Indeed, the multiplicity of actions would create a hardship for the Hourly Employees, the Court, and NGM.

186.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

187.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual Hourly Employees.

188.    Among the common questions of law and fact are:

      a.    Whether NGM's shift rate pay scheme failed to compensate the Hourly Employees for all hours worked;

      b.    Whether NGM's shift rate pay scheme deprived the Hourly Employees of overtime when they worked more than 40 hours in a workweek;

      c.    Whether NGM's shift rate pay scheme deprived the Hourly Employees of earned wages upon termination of employment;

      d.    Whether NGM's bonus pay scheme deprived the Hourly Employees of overtime at the required rate, based on all remuneration, when they worked more than 40 hours in a workweek;

      e.    Whether NGM's bonus pay scheme deprived the Hourly Employees of earned wages, including overtime wages, upon termination of employment;

      f.    Whether NGM's shuttle policy failed to compensate the Shuttle Class Members for all hours worked;

      g.    Whether NGM's shuttle policy deprived the Shuttle Class Members of overtime when they worked more than 40 hours in a workweek;

      h.    Whether NGM's shuttle policy deprived the Shuttle Class Members of earned wages upon termination of employment;

      i.    Whether NGM's decision not to pay the Hourly Employees all "straight time" and overtime wages due was made in good faith; and

      j.    Whether NGM's violations were willful.

189.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**
*Wieben, et al. v. Nevada Gold Mines LLC*

190.    NGM's shuttle policy, shift rate pay scheme, and bonus pay scheme deprived Plaintiffs and the other Hourly Employees of wages, including overtime wages, they are owed under federal and Nevada law.

191.    There are many similarly situated Hourly Employees who have been denied wages, including overtime wages, in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

192.    The Hourly Employees are known to NGM and can be readily identified and located through NGM's business and personnel records.

### NGM's Violations Were Willful and/or Done in Reckless Disregard of the FLSA and Nevada Law

193.    NGM knew it was subject to the FLSA's overtime provisions and Nevada Law's minimum wage, hours of work, overtime, and earned wages provisions.

194.    NGM knew the FLSA and Nevada law required it to pay non-exempt employees, including the Hourly Employees, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

195.    NGM knew each Hourly Employee worked more than 40 hours in at least one workweek during the relevant period.

196.    NGM knew it paid its Hourly Employees according to its shuttle policy, shift rate pay scheme, and/or bonus pay scheme.

197.    NGM knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" (without pay).

198.    NGM knew it required the Hourly Employees to don and doff safety gear and protective clothing, gather and store tools and equipment, wash-up, attend meetings, and perform their principal duties "off the clock."

199.    NGM knew it required the Hourly Employees to shuttle to and from the mines "off the clock."

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

200.     NGM knew it directed and controlled the Hourly Employees activities on the shuttle bus during transportation to and from the mines.

201.     NGM controlled the Hourly Employees' work procedures.

202.     NGM knew its Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with NGM.

203.     NGM knew its Shuttle Class Members' shuttling to and from the mines "off the clock" work was a fundamental requirement of their jobs with NGM.

204.     NGM knew its Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs with NGM.

205.     NGM knew its Hourly Employees routinely performed this daily, required "off the clock" work for NGM's predominant benefit.

206.     In other words, NGM knew its Hourly Employees performed compensable work (*e.g.,* donning/doffing their safety gear and protective clothing, gathering and storing tools and equipment, washing-up, attending meetings, and/or shuttling) "off the clock."

207.     NGM knew its shuttle policy, shift rate pay scheme, and/or bonus pay scheme failed to compensate the Hourly Employees for all hours worked, including overtime hours.

208.     NGM knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA and Nevada law.

209.     NGM knowingly, willfully, and/or in reckless disregard carried out its shuttle policy, shift rate pay scheme, and bonus pay scheme that systematically deprived the Hourly Employees of "straight time" wages, earned wages, and overtime for their hours worked over 40 in a workweek, in violation of the FLSA and Nevada law.

### COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

210.     Plaintiffs bring their FLSA claim as a collective action on behalf of themselves and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

211.    NGM violated, and is violating, the FLSA by employing non-exempt employees (Plaintiffs and the other FLSA Collective Members) in a covered enterprise for workweeks in excess of 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay – based on all remuneration – for all hours worked in excess of 40 a workweek.

212.    NGM's unlawful conduct harmed Plaintiffs and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

213.    Accordingly, NGM owes Plaintiffs and the other FLSA Collective Members the difference between the rate actually paid and the required overtime rate based on all remuneration.

214.    Because NGM knew, or showed reckless disregard for whether, its shift rate pay scheme and/or bonus pay scheme violated the FLSA, NGM owes Plaintiffs and the other FLSA Collective Members these wages for at least the past 3 years.

215.    NGM is also liable to Plaintiffs and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

216.    Finally, Plaintiffs and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

<u>Count II</u>
<u>Failure to Pay For All Hours Worked</u>
(Nevada Class and Shuttle Class)

217.    Plaintiffs bring their failure to pay for all hours worked claim as a class action on behalf of themselves and the other Nevada Class Members and other Shuttle Class Members under Nevada law and pursuant to Fed. R. Civ. P. 23.

218.     Plaintiffs have a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

219.    At all relevant times, NGM was subject to Nevada law because NGM was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

220.    At all relevant times, NGM employed Plaintiffs and each Hourly Employee as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

221.    NRS 608.016 provides that "an employer shall pay to the employee wages for each hour the employee worked." Nev. Rev. Stat. § 608.016.

222.    Specifically, pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code 608.115(1).

223.    NGM failed to compensate Plaintiffs, the Nevada Class Members, and Shuttle Class Members for all hours worked, as described in this Complaint.

224.    Accordingly, Plaintiffs "bring a civil action to recover the difference between the amount paid to [Plaintiffs, the Nevada Class Members, and the Shuttle Class Members] and the amount of the minimum wage," for each hour worked. Nev. Rev. Stat. § 608.260.

225.    As noted, NGM did not compensate Plaintiffs and the other Nevada Class Members for work before and after their shifts, performed under NGM's direction, discretion and control, on NGM's premises, and that was an essential requirement of the job and for NGM's benefit.

226.    Nevada's Minimum Wage Amendment, Nev. Const. Art. 15, § 16, guarantees a minimum wage for each individual hour worked, rather than as an average over a workweek. *See Porteous v. Capital One Servs. II, LLC*, 809 F. App'x 354, 357 (9th Cir. 2020).

227.    Plaintiffs, the Nevada Class Members, and Shuttle Class Members, have been deprived of their rightfully earned wages as a direct and proximate result of NGM's company-wide policies and practices in Nevada.

228.    As a direct result, Plaintiffs, the Nevada Class Members, and Shuttle Class Members have suffered, and continue to suffer, substantial losses.

229.    NGM regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Plaintiffs, the Nevada Class Members, and Shuttle Class Members.

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

230.     Through this unlawful course of conduct, NGM has deprived and continues to deprive Plaintiffs the Nevada Class Members, and Shuttle Class Members of records necessary to calculate with precision the compensation due to them.

231.     NGM's actions were willfully oppressive, fraudulent and malicious, entitling Plaintiff and the Nevada Class Members and Shuttle Class Members to punitive damages.

232.     NGM's violations were intentional.

233.     In accordance with N.R.S. 608.140, demand has been made to NGM for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

234.     Accordingly, Plaintiffs, the Nevada Class Members, and Shuttle Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law. *See* Nev. Rev. Stat. § 608.005 *et seq.*

### COUNT III
#### FAILURE TO PAY MINIMUM WAGES
#### (NEVADA CLASS AND SHUTTLE CLASS)

235.     Plaintiffs bring their failure to pay minimum wages claim as a class action on behalf of themselves and the other Nevada Class Members and other Shuttle Class Members under Nevada law and pursuant to Fed. R. Civ. P. 23.

236.     Plaintiffs have a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

237.     At all relevant times, NGM was subject to Nevada law because NGM was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

238.     At all relevant times, NGM employed Plaintiffs and each Hourly Employee as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

239.     Nev. Const. Art. 15, § 16 sets forth the minimum wage requirements in the State of Nevada. Section 16 provides that:

> The provisions of the section may not be waived by agreement between an individual employee and an employer. . . . An employee claiming violation of the section may bring an action against his or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded his or her reasonable attorney's fees and costs.

240.    Accordingly, Plaintiffs, the Nevada Class Members, and Shuttle Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

### COUNT IV
### FAILURE TO PAY OVERTIME WAGES
### (NEVADA CLASS AND SHUTTLE CLASS)

241.    Plaintiffs bring their failure to pay overtime claim as a class action on behalf of themselves and the other Nevada Class Members and other Shuttle Class Members under Nevada law and pursuant to Fed. R. Civ. P. 23.

242.    Plaintiffs have a private cause of action for unpaid overtime wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

243.    At all relevant times, NGM was subject to Nevada law because NGM was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

244.    At all relevant times, NGM employed Plaintiffs and each Hourly Employee as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

245.    Nevada law requires that employers, such as NGM, pay employees, such as Plaintiffs, the Nevada Class Members, and Shuttle Class Members, at least 1.5 times their regular rate of pay for all hours worked in excess of 40 a workweek. Nev. Rev. Stat. § 608.018(2).

246.    The Plaintiffs, the Nevada Class Members, and Shuttle Class Members, have been deprived of their overtime wages at the required rate – based on all remuneration – for all hours worked in excess of 40 a workweek as a direct and proximate result of NGM's shift rate pay scheme, shuttle policy, and bonus pay scheme.

247.    NGM regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Plaintiffs, the Nevada Class Members, and Shuttle Class Members.

248.    Through this unlawful course of conduct, NGM has deprived and continues to deprive Plaintiffs the Nevada Class Members, and Shuttle Class Members of records necessary to calculate with precision the overtime compensation due to them.

249.    NGM's actions were willfully oppressive, fraudulent and malicious, entitling Plaintiff and the Nevada Class Members and Shuttle Class Members to punitive damages.

250.    NGM's violations were intentional.

251.    In accordance with N.R.S. 608.140, demand has been made to NGM for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

252.    Accordingly, Plaintiffs, the Nevada Class Members, and Shuttle Class Members are entitled to recover unpaid overtime wages owed, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law. *See* Nev. Rev. Stat. § 608.005 *et seq.*

## COUNT V
### FAILURE TO PAY ALL WAGES UPON TERMINATION
### (NEVADA AND SHUTTLE CLASS)

253.    Plaintiffs bring their failure to timely pay wages upon termination claim as a class action on behalf of themselves and the other Nevada Class Members and other Shuttle Class Members under Nevada law and pursuant to Fed. R. Civ. P. 23.

254.    Plaintiffs have a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

255.    At all relevant times, NGM was subject to Nevada law because NGM was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

256.    At all relevant times, NGM employed Plaintiffs and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

257.    When an employer, such as NGM, terminates an employee, such as Plaintiffs, the Nevada Class Members, or Shuttle Class Members, their wages and compensation earned but unpaid at the moment of discharge immediately become due and payable to a quitting or resigning employee within 7 days or the next regular payday. Nev. Rev. Stat. §§ 608.020 and 608.030.

258.    Employers that do not pay discharged employees all earned wage "[w]ithin 3 days after the wages or compensation of a discharged employee becomes due" and pay all quitting or resigning employees "on the day the wages or compensation is due" are subject to a penalty equivalent to "the wages or compensation of the employee at the same rate from the day the employee resigned, quit or was discharged or placed on nonworking status until paid or for 30 days, whichever is less." Nev. Rev. Stat. 608.040(1)(a-b).

259.    NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purposes of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default." Nev. Rev. Stat. § 608.050.

260.    By failing to pay Plaintiffs, the Nevada Class Members, and Shuttle Class Members for all hours worked (including minimum wages, regular wages, and/or overtime wages owed) in violation

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

of Nevada law, at the required rate, based on all remuneration, NGM has failed to timely pay all wages due and owing to Plaintiffs, Nevada Class Members, and Shuttle Class Members who have separated their employment.

261.    NGM's violations were intentional.

262.    In accordance with NRS 608.140, demand has been made to NGM for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

263.    Plaintiffs, Nevada Class Members, and Shuttle Class Members who are no longer employed by NGM, respectfully request that the Court award all penalties due in accordance with NRS 608.140 and 608.040, and an additional 30 days' wages under NRS 608.050, together with attorneys' fees, costs, interest as provided by Nevada law. Nev. Rev. Stat. § 608.005 *et seq.*

### JURY DEMAND

264.    Plaintiffs demand a trial by jury on all Counts.

### RELIEF SOUGHT

WHEREFORE, Plaintiffs, individually and on behalf of the other Hourly Employees, seeks the following relief:

        a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

        b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

        c.    An Order appointing Plaintiffs and their counsel to represent the interests of the Nevada Class and Shuttle Class;

        d.    An Order finding NGM liable to Plaintiffs and the Hourly Employees for their unpaid overtime wages, liquidated damages, and any penalties, owed under the FLSA, plus interest

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

1

2

e.    An Order finding NGM liable to Plaintiffs and the Hourly Employees for their unpaid minimum wages, overtime wages, earned wages, penalties, and all damages, including punitive damages, owed and available under Nevada law, plus interest;

f.    A Judgment against NGM awarding Plaintiffs and the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or Nevada law;

g.    An Order awarding attorney's fees, costs, and expenses;

h.    Pre- and post-judgment interest at the highest applicable rates; and

i.    Such other and further relief as may be necessary and appropriate.

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*

Dated: July 11, 2025.

Respectfully submitted,

JOSEPHSON DUNLAP LLP

By: /s/ Richard M. Schreiber
Michael A. Josephson*
Richard M. Schreiber*
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
rschreiber@mybackwages.com

Richard J. (Rex) Burch*
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

RODRIGUEZ LAW OFFICES, P.C.
Esther C. Rodriguez
Nevada State Bar No. 006473
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
esther@rodriguezlaw.com

*admitted pro hac vice

ATTORNEYS FOR PLAINTIFFS &
THE HOURLY EMPLOYEES

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2025, I electronically filed the foregoing First Amended Class and Collective Action Complaint by causing the documents to be served via electronic service through the Court's CM/ECF system to counsel of record.

/s/ Richard M. Schreiber
Richard M. Schreiber

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
*Wieben, et al. v. Nevada Gold Mines LLC*